RAYMOND H. TSO and DOROTHY R. TSO, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Tso v. Commissioner
Docket No. 12084-78.
United States Tax Court
T.C. Memo 1980-399; 1980 Tax Ct. Memo LEXIS 179; 40 T.C.M. (CCH) 1277; T.C.M. (RIA) 80399; September 18, 1980, Filed *179 Petitioners, Navajo Indians, claimed as a medical expense deduction the cost of "sings" performed by Navajo medicine men. Held:sec. 213 medical expense determined. Held Further: sec. 6651(a) and sec. 6653(a) additions to tax sustained. Raymond H. Tso and *180 Dorothy R. Tso, pro se. Norman A. Lofgren, for the respondent. STERRETT
MEMORANDUM FINDINGS OF FACT AND OPINION STERRETT, Judge: Respondent, on July 26, 1978, issued a statutory notice in which he determined the following deficiencies and additions to tax: YEAR
DEFICIENCY
I.R.C. Sec. 6651(a)
I.R.C. Sec. 6653(a)
1973
$2,217.22
$554.00
$ 227.00
1974
3,253.10
0
162.65
1975
2,020.50
505.12
322.00
1976
1,691.68
0
84.58
After concessions the only substantive issue remaining is whether petitioners are entitled to deductions under section 213, I.R.C. 1954, for claimed medical expenses paid to Navajo medicine men during the calendar years 1973, 1974, 1975 and 1976. FINDINGS OF FACT Some of the facts have been stipulated and are so found. The stipulation of facts and the exhibits attached thereto are incorporated herein by this reference. Petitioners Raymond H. and Dorothy R. Tso, husband and wife, are Navajo Indians. During the years in issue and at the time they filed their petition herein, petitioners resided on the Navajo Reservation in Shiprock, New Mexico. For the calendar years 1973 and 1975, petitioners *181 filed joint income tax returns with the Internal Revenue Service Center at Austin, Texas on January 7, 1975 and January 3, 1977, respectively. For the years 1974 and 1976, petitioners timely filed joint income tax returns with the Internal Revenue Service Center at Austin, Texas. Christopher Ray Tso, petitioners' son, was diagnosed as having cancer during the year 1973 and died as a result of the disease on June 6, 1974. On their joint returns for each of the years here in issue, petitioners claimed as a medical expense amounts paid for Navajo healing ceremonies called sings. The cost of Navajo sings varies depending on what is done and the ability of the patient to pay; they also vary in duration depending on what ceremony is being performed. Baskets and buckskins are used frequently, though not always, in the sings. During the years here in issue, the typical cost of a Navajo basket and buckskin used in a Navajo sing was $75 and $100, respectively. Petitioners claimed on their return that the following amounts were expended for sings during the years here in issue: 1973
$10,000.00
1974
13,173.59
1975
8,000.00
1976
5,600.00
During an examination of *182 their 1973 and 1974 income tax returns, petitioners furnished respondent with a schedule of the alleged expenses comprising the medical expenses claimed for those years. Petitioners' schedule of 1973 medical expenses listed 33 different services performed for Christopher, the date the service was performed, and the name of the Navajo medicine man performing the service. Petitioners' schedule of 1974 medical expenses listed 30 different services performed, the date they were performed, and the Navajo medicine man performing the service. Eleven of the 1974 services were performed for members of the family other than Christopher Tso. The 1973 schedule alleged that Tom Farley, a Navajo medicine man, performed a service for Christopher on September 14 and 15. The cost of 1973 and 1974 sings included $125 for a basket and $125 for a buckskin per sing. Petitioners attached to their 1975 and 1976 returns schedules which listed 20 and 14 sings, respectively, at $400 per sing. The $400 was comprised of: $125 for a basket; $125 for a buckskin; $75 for medicine man; and $75 for helper. The 1975 schedule listed $75 for herbs and zero for helpers. The schedule listed the member of the family *183 for which the sing was performed, the date of the alleged sing, and the medicine man who officiated. Of the 14 sings, which allegedly occurred in 1976, petitioners stated that Tom Farley had performed five of them. Mr. Farley died in December 1975 at the age of 106. Neither the schedules provided with respect to 1973 and 1974 nor the schedules attached to the 1975 and 1976 returns were made contemporaneously with the actual payment of the expense. Further, petitioners maintained no receipts or other contemporaneous records to establish that they paid any money to medicine men for the expenses claimed. Petitioners' schedules of claimed medical expenses is, at best, a non-contemporaneous approximation of expenses. One of the medicine men listed by petitioners on their schedules testified at the trial of this case. Although petitioners did not list Leon Dash, a Navajo medicine man, it has been stipulated that he performed two sings for Christopher Tso in 1973; he was paid between $60 and $70 for each sing. No buckskins or baskets were used during these sings. During the years in issue, petitioner Mrs. Tso maintained a contemporaneous ledger of petitioners' debts and other *184 financial obligations and payments. This ledger does not reflect any loans to petitioners to pay for medical expenses. Under traditional Navajo medicine practices, it would not be usual for a cancer patient to receive sings every week. After the death of a Navajo from a disease, it is not accepted Navajo practice for the surviving family members to have sings from the same medicine man who performed sings for the decedent. Petitioner Mr. Tso possesses an Associate of Arts Degree in Business Administration and has received further formal education at the University of Arizona. In 1965, Mr. Tso received some training in the preparation of income tax returns and subsequently assisted other Navajo Indians with the preparation of their returns. During the years here in issue, Mr. Tso was employed by the United States Government, Department of Health, Education, and Welfare, as a human resources development specialist in 1973 and 1974 and as a personnel management specialist in 1975 and 1976. Mrs. Tso was employed as a registered nurse by the United States Government, Department of Health, Education, and Welfare. OPINION The primary question presented is whether petitioners *185 are entitled to claimed medical expense deductions for the years in issue. Section 213 allows a deduction for expenses actually paid during the taxable year for medical care of the taxpayer, his spouse or a dependent. The amount of the deduction is limited to that portion of the medical expenses which exceeds a specified percentage of adjusted gross income. [1] The regulations under section 213 require that the taxpayer substantiate the claimed deduction by furnishing the name and address of the person to whom payment was made and the amount and date of the payment. Further, additional substantiation is required when requested by the District Director. Section 1.213-1(h) Income Tax Regs.[2]
*186 Respondent does not contend that traditional Navajo medical treatment performed by Navajo medicine men is not medical care within the meaning of section 213(e)(1). Rather, respondent contends that the petitioners did not make expenditures for such traditional medical care and, in addition, that they failed to substantiate the expenditures that they did make. Petitioners have the burden of proving their entitlement to the claimed deductions. Rule 142(a), Tax Court Rules of Practice and Procedure.
With respect to these claimed medical expenses the record established substantial factual discrepancies, as well as inconsistencies, between petitioners' actions and traditional Navajo medical practices. The expert testimony at trial established that the cost of sings varies, depending on what ceremony is performed and the ability of the patient to pay. The testimony also revealed that a basket and a buckskin are not used in every sing; that sings generally are not performed weekly for cancer patients; and that, after the death of a Navajo by disease, it is not accepted Navajo practice for a surviving family member to have sings performed by the same medicine man who treated the *187 decedent. Petitioners' schedules contradict virtually every one of these Navajo traditions. The schedules for 1975 and 1976 list each ceremony at $40 with buckskin and basket for each sing comprising $250 of that cost. Petitioners' schedule lists sings as occurring on a near weekly basis. A comparison of the 1973 with the 1975 and 1976 schedules shows that the petitioners list the same medicine man performing both before and after Christopher Tso's death. Respondent has also shown the existence of substantial factual discrepancies. Petitioners' 1976 schedule listed five sings having been performed by Tom Farley. However, Mr. Farley died in December 1975 at the age of 106. Further, petitioners' 1973 schedule listed a two-day sing on September 14 and 15 for Christopher Tso. However, Mr. Tso testified that Christopher Tso was hospitalized on September 14, 1973. Finally, we note that Mrs. Tso maintained a detailed financial ledger during all the years in issue, yet it does not include any of the loans petitioner allegedly obtained to pay the claimed medical expenses. Compounding the negative inferences from the internal cultural inconsistencies and the factual discrepancies *188 is petitioners' failure to present witnesses who could substantiate the claimed expenses. None of the medicine men listed on petitioners' schedules testified. Yet Paul Patrick, a Navajo medicine man, testified that he performed 10 or more sings for petitioners (prior to Christopher's death) at a cost of $300 per sing. Petitioner Mr. Tso testified that he listed the major medical expenses on the schedules.Payment of $3,000 or more appears to us as a major medical expense and the failure to include Mr. Patrick on the 1973 and 1974 schedules convinces us that Mr. Patrick's testimony cannot be accepted at face value. While, as must be apparent, we are disappointed that the quality of the evidence is not higher, we are convinced, from all the testimony, that petitioners did, in fact, spend some amount in traditional Navajo sings for which they are entitled to section 213 medical deductions. However, we are constrained to bear heavily against the petitioners in making an estimate of their medical expenses in view of their laxity. Thus, relying on the doctrine initially articulated in Cohan v. Commissioner,39 F.2d 540 (2nd Cir. 1930), we find that petitioners expended *189 the following amounts in the following years as section 213 expense: 1973
$2,000.00
1974
2,500.00
1975
1,000.00
1976
500.00
In addition to claimed medical expenses respondent made adjustments with respect to the treatment or amount of certain claimed itemized deductions for the years 1975 and 1976. Petitioners have the burden of proving their entitlement to the itemized deductions. Welch v. Helvering,290 U.S. 111 (1933). No evidence was presented at trial with respect to this issue. Therefore we find that petitioners have failed to carry the burden of proof and we sustain respondent's determination. The final questions presented are whether petitioners are liable for the additions to tax under section 6651(a) (failure to file timely) and section 6653(a) (negligence). With respect to the section 6651(a) issue, the parties have stipulated that petitioners did not file their 1973 and 1975 returns until January 7, 1975 and January 3, 1977, respectively. The returns were due April 15, 1974 and 1976, respectively, as no extensions for time of filing were sought. In order to refute liability petitioners must establish that the delinquency *190 in filing was due to reasonable cause and not willful neglect. Petitioners' only explanation for the late filing of their 1973 return was the illness of their son. While illness or death of a child could constitute reasonable cause for some delay, the nine-month delay in the instant case precludes such a finding. Petitioners failed to present any evidence with respect to the year 1975. Therefore we sustain respondent's determination on this issue. With respect to the section 6653(a) addition to tax respondent contends that petitioners failed to carry the burden of proving that the cause of the underpayment was not their negligence or intentional disregard of the regulations. We agree. The record clearly establishes that petitioners failed to comply with the record keeping requirements of section 6001 and the regulations under section 213. Petitioners have offered no explanation for their actions. In light of their education and background, we find that their actions represent more than mere mistaken application of the law. Hence, petitioners are liable for the additions to tax under section 6653(a) for all the years here in issue. Decision will be entered under Rule *191 155.
Footnotes
1. Sec. 213(a)(1) reads as follows: (a) Allowance of Deduction.--There shall be allowed as a deduction the following amounts, not compensated for by insurance or otherwise-- (1) the amount by which the amount of the expenses paid during the taxable year (reduced by any amount deductible under paragraph (2)) for medical care of the taxpayer, his spouse, and dependents (as defined in section 152) exceeds 3 percent of the adjusted gross income, and (2) an amount (not in excess of $150) equal to one-half of the expenses paid during the taxable year for insurance which constitutes medical care for the taxpayer, his spouse, and dependents. ↩
2. Income Tax Regs. sec. 1.213-1(h) reads in pertinent part as follows: In connection with claims for deductions under section 213↩, the taxpayer shall furnish the name and address of each person to whom payment for medical expenses was made and the amount and date of the payment thereof in each case. If payment was made in kind, such fact shall be so reflected. Claims for deductions must be substantiated, when requested by the District Director, by a statement or itemized invoice from the individual or entity to which payment for medical expenses was made showing the nature of the service rendered, and to or for whom rendered; the nature of any other item of expense and for whom incurred and for what specific purpose, the amount paid therefor and the date of the payment thereof; and by such other information as the District Director may deem necessary.